**SEALED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 7, 2019

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **SEALED INDICTMENT** |
| | : | |
| | : | Criminal No. |
| | : | |
| v. | : | **Count One:** 18 U.S.C. § 1956(h) |
| | : | (Conspiracy To Launder |
| | : | Monetary Instruments) |
| LARRY DEAN HARMON, | : | |
| | : | **Count Two:** 18 U.S.C. § 1960(a) |
| | : | (Operating an Unlicensed Money |
| | : | Transmitting Business) |
| | : | |
| | : | **Count Three:** D.C. Code § 26-1023(c) |
| | : | (Money Transmission Without a |
| | : | License) |
| | : | |
| | : | Forfeiture: 18 U.S.C. § 982(a)(1); |
| | : | 21 U.S.C. § 853(p) |

**INDICTMENT**

The Grand Jury Charges:

Case No.19-cr-00395
Assigned to: Chief Judge Beryl A. Howell
Assign. Date: 12/3/2019
Description: INDICTMENT (B)

**INTRODUCTION**

At all times material to this indictment:

1. Defendant LARRY DEAN HARMON ("HARMON") was a resident of Ohio and Belize.

2. Starting in or about April 2014, HARMON owned and operated a Darknet search engine called Grams. The Darknet refers to a collection of hidden websites available through a network of globally distributed relay computers called the Tor network. They are hidden websites because, unlike standard Internet websites, on the Tor network there is no publicly available listing of the Internet Protocol (IP) addresses of servers hosting websites on the Tor network. The Darknet

includes a number of hidden websites that sell illegal goods, like guns and drugs, and services, like hacking and money laundering. In or about July 2014, HARMON posted online that he believed the Darknet primarily sold drugs and illegal items.

3. Starting in or about July 2014, HARMON owned and operated a money transmitting and money laundering business called Helix. Helix was a service linked to and affiliated with Grams, HARMON's Darknet search engine, and the two services were sometimes referred to collectively as Grams-Helix. Helix offered an Internet-based service that was accessible in the District of Columbia and other States.

4. Helix enabled customers, for a fee, to send bitcoins to designated recipients in a manner which was designed to conceal and obfuscate the source or owner of the bitcoins. This type of service is commonly referred to as a bitcoin "mixer" or "tumbler."

5. Helix was advertised to customers on the Darknet as a way to conceal transactions from law enforcement. In or about June 2014, shortly before launching Helix, HARMON posted online that Helix was designed to be a "bitcoin tumbler" that "cleans" bitcoins by providing customers with new bitcoins "which have never been to the darknet before." In or about August 2014, HARMON posted online that "Helix uses new addresses for each transaction so there is no way LE would able [sic] to tell which addresses are helix addresses," referring to law enforcement by the acronym LE. In or about March 2015, HARMON posted online: "No one has ever been arrested just through bitcoin taint, but it is possible and do you want to be the first? . . . Most markets use 'Hot Wallets', they put all their fees in these wallets. LE just needs to check the taints on these wallets to find all the addresses a market uses."

6. From at least in or about November 2016, Helix partnered with the Darknet market AlphaBay to provide bitcoin money laundering services for AlphaBay customers. AlphaBay was

a Darknet market in operation from in or about December 2014 through in or about July 2017, when the site was seized by law enforcement. At the time of the seizure, AlphaBay was the largest Darknet marketplace in operation, offering a platform for customers to purchase a variety of illegal drugs, guns, and other illegal goods. In or about November 2016, the AlphaBay website recommended to its customers that they use a bitcoin tumbler service to "erase any trace of [their] coins coming from AlphaBay," and provided an embedded link to the Tor website for Grams-Helix. At all relevant times, including in or about November 2016, both AlphaBay and Grams-Helix were accessible via computers in the District of Columbia and elsewhere, and were accessed in the District of Columbia.

7. On or about November 8, 2016, a Federal Bureau of Investigation (FBI) employee acting in an undercover capacity from a location in the District of Columbia transferred 0.16 bitcoin from an AlphaBay bitcoin wallet to Helix. Helix then exchanged the bitcoin for an equivalent amount of bitcoin, less a 2.5 percent fee, which was not directly traceable to AlphaBay.

8. In total, Helix exchanged at least approximately 354,468 bitcoins—the equivalent of approximately $311 million in U.S. dollars at the time of the transactions—on behalf of its customers, including customers in the District of Columbia. The largest volume of funds sent to Helix came from Darknet markets selling illegal goods and services, including AlphaBay, Agora Market, Nucleus, and Dream Market, and other Darknet markets.

9. HARMON began to shut down operations for Grams and Helix in or about December 2017.

10. In most states or jurisdictions, operating a money transmitting business without a license was punishable as a misdemeanor or a felony. The failure to obtain a license in such jurisdictions was a federal offense. Under District of Columbia law, money transmitting

businesses had to obtain a license from the Superintendent of the Office of Banking and Financial Institutions of the District of Columbia, and the failure to do so was a felony.

11. Federal law also required money transmitting businesses to be registered with the Financial Crimes Enforcement Network ("FinCEN"), which is located in the District of Columbia. The failure to register with FinCEN was a federal felony offense.

12. Federal law barred money transmitting businesses from transmitting funds that were known to be derived from a criminal offense or intended to be used to promote unlawful activity.

13. At all relevant times, Helix was not licensed by the District of Columbia, nor was it registered with FinCEN.

## COUNT ONE
**(Conspiracy To Launder Monetary Instruments)**

14. The allegations set forth in paragraphs 1 through 13 of this Indictment are re-alleged and incorporated by reference herein.

15. From in or about July 2014 until in or about December 2017, in the District of Columbia, Belize, and elsewhere, HARMON did knowingly and willfully combine, conspire, confederate and agree with other persons, including the administrator of AlphaBay and other persons known and unknown to the grand jury, to violate:

    a. Title 18, United States Code, Section 1956(a)(1)(A)(i), by conducting and attempting to conduct financial transactions affecting interstate commerce, that is, the sending and receiving of bitcoin transactions, which involved the proceeds of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, knowing that the property involved in these

        financial transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance; and

    b.    Title 18, United States Code, Section 1956(a)(1)(B)(i), by conducting and attempting to conduct financial transactions affecting interstate commerce, that is, the sending and receiving of bitcoin transactions, which involved the proceeds of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, knowing that the property involved in these financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity;

all in violation of Title 18, United States Code, Section 1956(h).

16. It was the goal of the conspiracy for the defendant, HARMON, and other co-conspirators to unlawfully enrich themselves by operating a bitcoin money laundering service which would conceal and promote illegal Darknet drug sales and other illegal activity.

**(Conspiracy To Launder Monetary Instruments, in violation of
Title 18, United States Code, Section 1956(h))**

### COUNT TWO
**(Operating an Unlicensed Money Transmitting Business)**

17. The allegations set forth in paragraphs 1 through 13 of this Indictment are re-alleged and incorporated by reference herein.

18. From in or about July 2014 until in or about December 2017, HARMON knowingly conducted, controlled, managed, supervised, directed, and owned an unlicensed money transmitting business, that is, Helix, as that term is defined in Title 18, United States Code, Section 1960(b)(1), affecting interstate or foreign commerce, and which:

   a. Operated without an appropriate money transmitting license in the District of Columbia, where such operation is punishable as a felony under District of Columbia law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

   b. Failed to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330, and the regulations prescribed thereunder; and

   c. Otherwise involved the transportation and transmission of funds known to HARMON to have been derived from a criminal offense and intended to be used to promote and support unlawful activity;

in violation of Title 18, United States Code, Section 1960(a).

(Operating an Unlicensed Money Transmitting Business, in violation of Title 18, United States Code, Section 1960(a))

### COUNT THREE
(Money Transmission Without a License)

19. The allegations set forth in paragraphs 1 through 13 of this Indictment are re-alleged and incorporated by reference herein.

20. From in or about July 2014 until in or about December 2017, HARMON did, without obtaining a license issued by the Superintendent of the Office of Banking and Financial Institutions of the District of Columbia, engage in the business of money transmission, as that term is defined in D.C. Code § 26-1001(10), through the operation of Helix, in that he engaged in the

business of receiving money for transmission, and transmitting money, within the United States and to locations abroad.

**(Money Transmission Without a License, in violation of § 26-1023(c) of the D.C. Code)**

## FORFEITURE ALLEGATION

1. Upon conviction of the offenses alleged in Counts One and Two, the defendant shall forfeit to the United States any property, real or personal, involved in the offense, and any property traceable thereto, pursuant to Title 18, United States Code, Section 982(a)(1). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, involved in Counts One and Two, and any property traceable thereto.

2. The United States will also seek forfeiture of the following specific property upon conviction of an offense alleged in Counts One and Two:

   a. The real property located at 3853 Yellow Creek Dr, Akron, Ohio, more particularly described as Sublot 74 in the Sanctuary of Bath Subdivision Phase II, as recorded in Plat Cabinet B, Slides 566-573 of Summit County, Ohio records;

   b. The real property located at 6304 N Ensenada Crt, Aurora Colorado, more particularly described as Lot 8, Block 5, High Point at Dia Subdivision Filing No 1, Recorded December 15, 2005 as Reception No. 20051215001372670 and Affidavits of Correction Recorded January 22, 2007 at Reception No 2007000007845 and August 17, 2006 at Reception No 20060817000834180, County of Adams, State of Colorado; and

   c. The real property located at 351 N Messner Rd, Akron, Ohio, more particularly described as all of Lot Number 91 and East ½ of lot 92 front and rear in the Nimisila Heights Second Addition as recorded in Plat Book 43, Page 25 of Summit County Records.

3. If any of the property described above, as a result of any act or omission of the defendant:

   d. cannot be located upon the exercise of due diligence;

   e. has been transferred or sold to, or deposited with, a third party;

  f.  has been placed beyond the jurisdiction of the court;

  g.  has been substantially diminished in value; or

  h.  has been commingled with other property which cannot be divided without difficulty,

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 982(a)(1); and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON.

_Jessie K. Liu / JPH_
ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

U.S. District and Bankruptcy Courts
for the District of Columbia
**A TRUE COPY**
ANGELA D. CAESAR, Clerk
By _Elizabeth A. Douglas_
Deputy Clerk

8